THOMPSON, AUDITOR OF PUBLIC ACCOUNTS ET AL. *v.* MC-LEOD.

[73 South. 193.]

1. TAXATION. *Equality. Property tax. Constitutional provisions.*

Chapter 110, Laws 1914, entitled, "An act to levy, collect and enforce the payment of an annual privilege tax or occupation fee upon all persons, associations of persons, or business firms and corporations, pursuing the business of extracting turpentine from standing trees" and fixing the tax at one-fourth of one per cent each year for each cup or box, is a property tax and not a privilege tax, and is violative of Constitution 1890, section 112, providing that taxation shall be uniform and equal throughout the state, and that property shall be taxed in proportion to its value.

2. TAXATION. *Property. Turpentine leases.*

    A turpentine lease is a thing of value—"property" upon the value which the state can levy an *ad valorem* tax.

APPEAL from the chancery court of Hinds county.

HON. O. B. TAYLOR, Chancellor.

Bill for injunction by A. J. McLeod against Duncan Thompson, auditor of Public Accounts to the State of Mississippi, and the treasurer of the state. From a decree for complainants, defendants appeal.

Appellants are, respectively, auditor of public accounts and treasurer of the state of Mississippi, and prosecute this appeal from a decree of the chancery court of Hinds county, Miss., overruling their demurrer to a bill of complaint filed by appellee to restrain these officials from levying and assessing the tax attempted to be imposed by chapter 110, Laws of 1912, being "An act to levy and collect and enforce the payment of an annual privilege tax or occupation fee upon all persons, associations of persons, or business firms and corporations, pursuing the business of extracting turpentine from standing trees." Appellee is a resident and citizen of Hancock county, Miss., and engaged extensively in the turpentine business. His bill of complaint is very lengthy, and it is unnecessary to set out the averments thereof in full. The material facts alleged are that complainant is the owner of several turpentine distilleries, and was, during the year preceding January 1, 1913, engaged in the extraction of sap and resin from a large number of pine trees and transporting the same to his distilleries and then and there distilling the crude gum or resin into the manufactured product called "turpentine"; that he was operating seventeen crops of turpentine on the trees, describing in Exhibit A and A 1 to the bill, consisting of one hundred and seventy thousand boxes; that the land shown in Exhibit A belonged exclusively to the complainant, while the trees standing upon the lands described in Exhibit A 1 were

leased to the complainant for the purpose and with the right to extract the crude turpentine; that the timber upon all of the lands mentioned had been duly assessed for *ad valorem* taxes and taxes paid thereon; that in extracting resin from trees the so-called turpentine crops last usually about three years and during the first year about fifty per cent. of the entire value of the use of the sap is extracted, about thirty per cent. the second year, and twenty per cent. the third year, and that after the third year the trees are generally of no value for the purpose of extracting resin, but that complainant, however, was operating about two crops tapped or cupped four years ago; that five crops were operated by complainant for the first time, five crops the second year, five crops the third year, and two crops the fourth year; that complainant in operating turpentine distilleries in the state of Mississippi was already paying a privilege tax for the right so to do and in accordance with the statutes of this state. The bill then charges that chapter 110, Laws of 1912, attempting to impose a so-called privilege tax for the right to extract turpentine from standing trees, is unconstitutional and void for many reasons therein alleged, one of which is that the enforcement of the provisions of said act would contravene section 112 of our state Constitution, the contention being that the tax here attempted to be imposed is a property tax and not a privilege tax, and, being a property tax, it is not equal and uniform.

Section 1 of the act in question is as follows:

"Be it enacted by the legislature of the state of Mississippi, that there is hereby levied on the gross annual cutting or extraction the following annual privilege tax or occupation fee for the year 1912, and for each subsequent year, upon each person, association of persons, or business firms and corporations, pursuing the business of extracting turpentine from standing trees.

"That for carrying on the business of extracting turpentine from standing trees the license shall be one-

fourth (¼) of one cent each year for each cup or box.''

Other sections of this act require sworn statements to be made to the auditor by all persons, firms, and corporations affected by the act; these sworn statements to be rendered on or before the 1st day of February for the year ending December 31st next preceding. The statement required is ''a sworn statement of the total extracting of turpentine.'' A penalty is imposed for failure to pay the tax, and the state treasurer is authorized to distrain the goods and chattels belonging to the person, firm, or corporation in default and to sell a sufficient amount of the property of the taxpayer at public vendue to pay the taxes, together with ten per cent. thereon for each month for which the taxes remain unpaid; the moneys collected to be placed in the treasury to the credit of the general revenue fund of the state.

*Geo. H. Ethridge,* Assistant Attorney-General, for appellants.

*Green & Green* and *Jas. R. McDowell,* for appellees.

STEVENS, J., delivered the opinion of the court.

It is conceded by counsel for the state that, if the tax here attempted to be imposed is a property tax, the act imposing it is unconstitutional and void. In following the rule, so frequently announced by the courts, of looking through the form to the substance, it is manifest that the tax exacted by the act under review operates, and can only operate, as a property tax and is really not a privilege tax. We are not called upon to place any limitation upon the right of the state to exact licenses or impose privilege taxes that are really such and to require the taxes as a condition precedent to the right to do business within the confines of our commonwealth. We do not question the right of the state, also, to measure a privilege tax by the volume or amount of business done. The act here assailed does not even attempt to

require a license or permit to be issued by any officer or department of the government as a condition precedent to the right of a citizen to extract crude turpentine from pine trees. No document of any kind is to be issued in advance. The tax demanded by the act is to be paid at the end of the year and after the resin is extracted—after the so-called privilege has been exercised. On default by the taxpayer, payment of the tax is enforced by seizure and sale of any property belonging to the defaulter. The enforcement of the tax conforms to the procedure adopted for the enforcement of *ad valorem* taxes. The act under review does not levy a privilege tax on the right or privilege of selling resin or the gum of the tree as originally extracted and commonly known as "crude;" but the privilege, if any, which is taxed, is the privilege or right of the owner or lessee of pine trees to "extract turpentine from standing trees." Section 1 of the act makes no effort to conceal the subject-matter of the tax. It expressly declares that it is "levied on the gross annual cutting or extraction," and the tax levied is "one-fourth of one cent each year for each cup or box." It is true the act in other language refers to it as a business—"a business of extracting turpentine from standing trees." The imposition of such a tax is not on a business, but on the property involved. Here we have a citizen of our state who owns and operates his own turpentine distilleries, who owns the pine trees which produce the resin, the crude product, without which his distilleries cannot be operated, and although he pays *ad valorem* taxes upon his land and standing trees at their true value, and although he pays a privilege tax for the right to manufacture spirits of turpentine from the annual product of the trees, he is now called upon to pay an additional tax of one-fourth of one cent on each box cut or chopped on the trees, and it requires no refinement to observe at once that this is an additional burden of taxation operating, not indirectly,

but directly upon complainant's property. Here the legislature attempts to say to the citizen:

"Although we recognize that you are the lawful lessee or owner of standing pine trees which produce when tapped an annual product of resin, and although we have demanded and you have paid your full share of taxes upon these standing pine trees and the soil which continually feeds them, nevertheless, thou shalt not lay ax to the tree to extract the natural gum without subjecting any property which you have in the state of Mississippi to an additional tax of one-fourth of a cent for each box you cut."

This act strikes down the inherent right of the property owner to lay hand upon his own property. Every owner of a pine tree enjoys the same natural right to extract gum from the tree as the owner of a vineyard has to pluck his own grapes. It would be the same thing to require a privilege tax as a precedent right of the owner to pull the ripe pecans from his pecan orchard or to enjoy a drink of pure water from the cool spring of the old homestead. As stated, the levy is not imposed for the right to sell crude turpentine. If this were done, then any one engaged in the regular business of buying and selling crude gum might be liable. The writer is not disposed to commit this court to any unnecessary process of reasoning in this opinion, but having been born and reared amongst the tall, long-leaf pines of South Mississippi, is familiar therefore with the turpentine business and feels safe in asserting that there is no well-defined business of buying and selling the crude turpentine. It is true that many individuals tap their own trees and sell the annual crude product to the distilleries. It is also true that the owner of the turpentine distillery, more familiarly known as the "still," frequently leases standing timber for the express purpose of boxing the trees for turpentine. In doing so, however, he is the owner either of the timber or of a valuable lease, generally referred to as a turpentine

lease. It has been expressly decided by this court that a turpentine lease is a thing of value—"property," upon the value of which the state can levy and does levy an *ad valorem* tax.

The nature of this lease was properly characterized by our court in *Naval Stores Co.* v. *Adams,* 104 Miss. 392, 61 So. 417. In the language of the opinion by REED, J., the court says that:

"The leases give the appellant the right to extract the crude gum from the pine trees, and then thereafter such product is manufactured in Harrison county into turpentine and resin."

And in *Jones* v. *Adams,* 104 Miss. 401, 61 So. 420, the court, again speaking by REED, J., says:

"The question before us is whether such turpentine lease is personal property, subject to taxation. It is understood that the lease gives a . .. . privilege to enter upon land for a term and extract the gum or crude products from the pine trees, which is afterwards manufactured into what is known as naval stores. . . . Now, is it not property? It is subject to ownership, it has a value, and it may be bought and sold. It seems clear to us that it is property. From its very nature it is personal property. The lease, or right, or privilege, which is owned by appellant, being personal property, is subject to be taxed as such."

There can, then, be no such thing as a valid and lawful turpentine lease without the right to extract the crude gum; and the case therefore falls clearly and squarely within the principle recently announced by this court in the companion case of *Duncan Thompson, Auditor, et al.* v. *A. L. Kreutzer et al.,* No. 18,249, 72 So. 891, wherein our court, by Chief Justice SMITH, observes that:

"A tax on an essential attribute of a thing is a tax on the thing itself," and "no tax can be imposed on the right of ownership which is not also a tax on property."

As stated by Chief Justice MARSHALL in *Brown* v. *Maryland,* 12 Wheat. 444, 6 L. Ed. 687:

"All must perceive that a tax on the sale of an article, imported only for sale, is a tax on the article itself."

And subsequently, in the case of *New York* v. *Wells,* 208 U. S. 21, 28 Sup. Ct. 193, 52 L. Ed. 373, the rule was again declared by the supreme court of the United States, with reference to imports:

"That a state cannot, in the form of a license or otherwise, tax the right of the importer to sell."

In *Brushaber* v. *Railroad Co.,* 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, the supreme court of the United States, discussing the right of the Federal government to levy a direct tax without an apportionment, observes with reference to a tax on income and property:

"Coming to consider the validity of the tax from this point of view, while not questioning at all that in common understanding it was direct merely on income and only indirect on property, it was held that, considering the substance of things, it was direct on property in a constitutional sense, since to burden an income by a tax was, from the point of substance, to burden the property from which the income was derived, and thus accomplish the very thing which the provision as to apportionment of direct taxes was adopted to prevent."

So likewise in *Pollock* v. *Trust Co.,* 157 U. S. 558, 15 Sup. Ct. 680, 39 L. Ed. 811, the court, by its Chief Justice, well says that:

"A tax upon property holders in respect of their estates, whether real or personal, or of the income yielded by such estates, and the payment of which cannot be avoided, are direct taxes," and "an annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income. This law taxes the income received from land and the growth or produce of the land. Mr. Justice PATER-

SON observed in *Hylton* v. *United States,* 3 U. S. (3 Dall.) 171, 1 L. Ed. 556, 'Land, independently of its produce, is of no value.' ''

In the language of the distinguished Coke:

''What is land but the profits thereof?'' Co. Lit. 45.

''A devise of the rents and profits or income of lands passes the land itself both at law and in equity.'' 1 Jarman on Wills (5th Ed.), 789, and cases cited.

Following the reasoning of this court in *Thompson et al.* v. *Kreutzer et al., supra,* there cannot be such a thing as a turpentine lease without an owner or lessee. If, then, you tax the lease itself with an *ad valorem* tax and at the same time exact tribute from the lessee in laying the ax to the tree, it is a case of double taxation. pure and simple. There cannot be ownership of standing pine trees without an owner, and if you tax the standing trees with an *ad valorem* tax, and at the same time exact tribute from the owner as a condition precedent to his right to lay hands upon the tree, the state is imposing double taxation upon the tree itself. Section 112 of our Constitution. solemnly declares that ''taxation shall be uniform and equal throughout the state,'' and that ''property shall be taxed in proportion to its value.'' If the tax here questioned can lawfully be imposed, then the legislature of our state in a desperate search for revenue can effectually brush aside the essential feature of equality and uniformity demanded by the Constitution. The provision that property shall be taxed in proportion to its value would be nullified, and the integrity of the Constitution itself destroyed. The legislature is here attempting to denominate private use of property as a public use. Appellee, in taking crude gum from his own trees, is not directly engaged in any kind of mercantile business. He does not bring his wares into the market place nor upon stock markets. He is upon his own private property pursuing a natural right.

''A legislature cannot make a private purpose a public purpose, or draw to itself or create the power to

authorize a tax or a debt for such a purpose, by its mere fiat." *Dodge* v. *Township,* 107 Fed. 827, 46 C. C. A. 661, 54 L. R. A. 242.

This case, while different from, falls within the principle announced by our court in *Wilby* v. *State,* 93 Miss. 769, 47 So. 465. At page 772 of 93 Miss., at page 466 of 47 So. our court says:

"Laws of this nature approximate an abridgment of the liberty of the citizen guaranteed to him by the Fourteenth Amendment of the Constitution of the United States, and should receive the strictest construction. Liberty, in its broad sense, must consist in the right to follow any of the ordinary callings of life without being trammeled."

The act under review does not undertake to make a distinction between the humble homesteader who taps a few trees by his own home and the large operator of many distilleries. No distinction can in fact be made. The liability here imposed is conclusively fixed at the root of the tree, and not at the market place. The poorest and most humble homesteader in the country might tap a few trees on his forty acres, load a few barrels of crude turpentine, convey it to the distillery with a one-ox cart, and thereby subject himself to liability.

The conclusion of the whole matter, then, is that this tax operates necessarily and immediately as a property tax and not as a privilege tax, and the statute imposing it violates section 112 of our Constitution, and the result reached by the learned chancellor is eminently correct, and his decree is, accordingly, affirmed.

*Affirmed.*

POTTER, J. I dissent from the majority opinion in this case. The statute under consideration puts a privilege tax on those engaged in the business of extracting turpentine from standing pine trees. The majority opinion in this case says that the statute is a "property tax" and does not put the tax in question

on the business of extracting crude turpentine, but the statute, in plain English, says it does.

The majority opinion in this case says that the act under review does not levy a privilege tax on the right or privilege of selling resin, or the gum of the tree as originally extracted and commonly known as ''crude.'' The tax, however, is upon those engaged in the business of extracting crude turpentine; and to engage in a business is to engage in an occupation for profit; and how else is a man who is engaged in extracting turpentine from trees to obtain a profit therefrom except by a sale of his products, either in its crude form or as a more highly manufactured article. The opinion in this case says that the tax in question is a tax on property. But the statute says that it is a tax upon the persons engaged in a particular line of business. That this tax is a tax on business, and not on the property, is demonstrated by the fact that the tax imposed is not a lien on the property used in the business, and, if the business is carried on by another than the owner of the land, the owner is not personally liable for the tax.

It is said in the majority opinion that the defendant in this case has paid an *ad valorem* tax on his property, as the standing pine trees are part of the land and he has paid a tax on the land. That is true, but it does not prevent the state from imposing a privilege tax on persons engaged in a business for profit and using in their business the property taxed. Every merchant in the state pays an *ad valorem* tax on his stock of goods, but this does not exempt him from paying a privilege tax to sell the same goods. The owner of a cart pays an *ad valorem* tax on his cart, and, if he owns a mule, an *ad valorem* tax on his mule. He can use the cart and mule for his own purposes without paying a privilege tax on same. But if he uses this same cart and mule as a public dray for profit, he is required to pay a privilege tax. The statute in this case provides that the tax is upon the business of extracting crude turpentine.

It is a revenue measure pure and simple, and the said tax is, in no sense, a tax on the property itself.

I know of no way to construe an unambiguous statute except by its plain terms. I take it that this statute means what it says, and its purposes could not be put in clearer language. The tax is on the occupation of "pursuing the business" of extracting turpentine from standing trees. The statute is designated a privilege tax in its title. I know of no good reason why every other occupation, from telling fortunes to running a railroad, can be taxed as a privilege, and the extensive business of extracting resin from pine trees cannot be so taxed.

The fact that this tax is measured by the number of trees taxed does not make the act invalid; for this only fixes the measure or the *quantum* of tax, just as the amount of stock carried in a grocery store fixes the amount of privilege tax to be charged; or the capacity of a press in an oil mill fixes the privilege tax to be charged upon the cotton-seed oil business.

Cook, J., joins in this dissent.