(No. 39286.—

George E. Mahin, Appellant, *vs.* Walter S. Baltis, Trustee, *et al.,* Appellees.

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

JEREMIAH MARSH, of Chicago, for appellant.

JACOB SHAMBERG, GEORGE A. LANE, and FRED F. HER-ZOG, all of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, George E. Mahin, a citizen and taxpayer, brought this action against the defendants, who are the trustees and the paymaster of the Metropolitan Sanitary District of Greater Chicago. The complaint sought an injunction to restrain the paymaster and the other defendants from approving or making certain salary payments alleged to be unlawful. It also sought to recover from the individual defendants, jointly and severally, the sum of $455,000 which was alleged to have been unlawfully expended in the payment of wages to employees of the District. The complaint prayed that the amount so recovered be restored to the District under the supervision of the court. The circuit court of Cook County held unconstitutional the statute upon which the plaintiff based his claim for a personal judgment against the defendants, and dismissed the complaint for want of equity. The plaintiff has appealed directly to this court upon the ground that the case involves questions arising under the constitutions of the United States and of the State of Illinois.

The statutory provision which was held unconstitutional was added to the Chicago Sanitary District Act in 1963. It provides: "Any citizen may maintain a suit to restrain a disbursing officer from making any payment in contravention of any provision of this law, or of any rule, regulation or order thereunder. If any sum is paid contrary to any provision of this law, or of any rule, regulation or order thereunder, the sum may be recovered in an action maintained by any citizen against any officer or agent therefor who certified or approved the payment to the Treasurer, or

against the Treasurer if he failed to obtain proper certification or approval from the proper officer before making such payment." Ill. Rev. Stat. 1963, chap. 42, par. 323.30a.

The constitutionality of this statute is challenged upon the ground that it is special legislation because it singles out, for the imposition of personal liability, the officers and agents of this sanitary district, from among "all other sanitary districts and municipalities of the State." It is also attacked upon the ground that it confers judicial functions on nonjudicial officers, and is so vague and indefinite as to deprive certain officers and employees of the District of equal protection of the laws and of due process. The parties have argued these constitutional issues extensively, as well as the construction of the statute and its applicability to the defendants in this case.

To the extent that the plaintiff's complaint is based upon the statute, personal liability exists only as to payments made in contravention "of any provision of this law, or of any rule, regulation or order thereunder." And insofar as the complaint asserts the right of a citizen and taxpayer to enjoin the illegal disbursement of public funds, the right to an injunction is conditioned upon the illegality of the disbursement. Unless, therefore, the conduct of which the plaintiff complains falls within the ambit of the statute, or is otherwise unlawful, the complaint does not state a claim upon which relief can be granted. For this reason we consider first the asserted illegality of the conduct of which the plaintiff complains.

This conduct falls into two categories. The first concerns the rate of wages paid since January 1, 1964, to employees in three job classifications: "Operating Engineers A", "Operating Engineers B", and "Maintenance Laborers B". It is alleged that there are at least 77 employees of the District in the first of these classifications, 50 in the second, and 63 in the third, and that the wage rate in each classification was increased by the District's 1964 appropriation ordi-

nance. The increase for the first two classifications was $12 per month, or $144 per year, and for the third classification the increase was $8 per month, or $96 per year.

The complaint alleges that the wage rates fixed by the District's 1964 appropriation ordinance substantially exceed the prevailing wage rates "on comparable jobs in representative private enterprises and government agencies in Chicago, outside and independent of the Sanitary District." The governmental agencies with which the District's wage rates are compared are the State of Illinois in its operation of the State of Illinois Building in Chicago, and the General Service Administration of the United States. The private organizations include those enterprises which are members of the Building Managers Association of Chicago; those organizations in Chicago which are surveyed annually by the Bureau of Labor Statistics of the United States Department of Labor, and "Browne & Storch, Inc., a private enterprise which under an independent contract with the Sanitary District operates the Sanitary District's own headquarters building at 100 E. Erie Street, Chicago."

The comparisons set out in the complaint show that the wage rates of the District exceed the wage rates of the private and governmental organizations with which they are compared by percentages ranging from 16.26 per cent to 51.08 per cent. Computed upon the basis of the smallest amount by which the District's wage rates exceed those of the organizations with which they are compared, the excess annual cost to the District for the 290 employees in the three job classifications is alleged to be $384,048.

The wages of the District employees are alleged to be unlawful to the extent that they exceed wages prevailing on comparable jobs in the Chicago area. And by an amendment to the complaint it was alleged: "These wage rates were fixed pursuant to the Sanitary District's Prevailing Rate Schedule, under which the Sanitary District purports to pay employees the prevailing rate of wages paid gen-

erally in the locality to employees engaged in private industry in work of a comparable character and represented by unions."

So far as this aspect of the complaint is concerned, we are of the opinion that it fails, for several reasons, to allege any unlawful conduct on the part of the defendants. In the first place, the pertinence of the allegations concerning prevailing rates of wages is not apparent. The complaint seems to say that although the District purports to pay its employees the prevailing rate of wages, it actually pays them at a higher rate because its Prevailing Rate Schedule is incorrect. But in all of the lengthy factual allegations of the complaint there is no statement of any legal duty imposed upon the officers of the District with respect to the payment of wages at prevailing rates.

In the second place, although the complaint alleges that comparable work is done by those employees whose wage rates have been selected for comparison with the wages of the District's employees, other allegations of the complaint cast doubt upon that assertion. One of the comparison groups consists of those employees of the District who work in its central office building, and all of the employees selected for comparison work in office buildings. That the conditions under which these employees do their work are comparable to those of the District's employees here in question, who from the allegations of the complaint appear to be those who work in the sewage treatment plants of the District, is dubious on the face of the complaint.

Finally, the plaintiff charges that these wage rates are excessive and that their payment "is an express violation of the governing statute, which restricts wage scales to the rates 'necessary * * * for the proper management of the affairs of the Sanitary District.'" The statute, however, does not contain any such restriction. Section 4, which prescribes the powers and duties of the trustees, contains the following provisions with respect to compensation of officers

and employees: "The Board shall prescribe the powers and duties and fix the compensation of the general superintendent and of all the officers and employees of said sanitary district. Provided, however, that the salary of the president of said board of trustees shall not exceed $12,500 per annum and the salary of each of the other trustees shall not exceed $10,000 per annum." (Ill. Rev. Stat. 1963, chap. 42, par. 323.) Apart from the specified restrictions on the salaries of the trustees, this section is the customary broad grant of power to the corporate authorities of municipalities to fix the rates of pay of employees. The plaintiff derives the word "necessary" from the following paragraph of section 4 which provides: "Said board of trustees shall have full power to pass all necessary ordinances, orders, rules, resolutions and regulations for the proper management and conduct of the business of said board of trustees and of said corporation and for carrying into effect the object for which such sanitary district is formed." This affirmative grant of power can not reasonably be read as a limitation on the authority of the trustees to determine the salaries of employees. *Cf. Tribune Co.* v. *Thompson,* 342 Ill. 503.

This aspect of the complaint is therefore untenable, both because it relies upon an inadequate factual basis and because the legal obligation which it seeks to impose is nonexistent.

The second expenditure which the complaint challenges involves the job classifications "Engineering Assistants I, II, and III." It is alleged that on July 1, 1964, in the middle of the District's appropriation year, the compensation of these employees was increased by means of a change in their method of compensation. This increase is asserted to have resulted in the expenditure of $69,744 during the second half of 1964. And it is alleged that the increase was in violation of section 5.7a of the statute which provides: "No changes in title and/or rate shall take place during the fiscal year among the titles and rates that are listed in the Annual

Appropriation Ordinance. This does not prohibit adjustments in salaries as a result of merit increases or union increments as appropriated for in the Annual Appropriation Ordinance." Ill. Rev. Stat. 1963, chap. 42, par. 324q.1.

When the complaint is analyzed in terms of this statute, it seems to allege clearly that these increases were changes in the rates of payment listed in the appropriation ordinance, and that the changes were made during the District's fiscal year, which runs from January 1 to December 31. The complaint also alleges that "these increases were not, and were not the result of, merit increases or union increments as appropriated for in the Annual Appropriation Ordinance for the year 1964." The force of this allegation is somewhat qualified by lengthy and argumentative statements of the plaintiff's interpretation of the meaning of the terms "merit increases" and "union increments." While these statements have no proper place in a pleading, we are of the opinion that they do not entirely nullify the basic allegation, and that the complaint charges a violation of the statute by a change in the rates of pay of the Assistant Engineers during the fiscal year.

Since the complaint is framed both as an action under section 4.30a of the statute (Ill. Rev. Stat. 1963, chap. 42, par. 323.30a) and as an ordinary taxpayer's action, it is necessary to consider the extent to which the plaintiff is entitled to relief upon each of these grounds.

The statute provides for two types of relief with respect to illegal payments: (1) a suit for injunction against a disbursing officer, and (2) an action to recover any sum illegally paid, which may be maintained against any officer or agent "who certified or approved the payment to the Treasurer, or against the Treasurer if he failed to obtain the proper certification or approval from the proper officer before making such payment." (Ill. Rev. Stat. 1963, chap. 42, par. 323.30a.) So far as the defendant trustees are concerned, it is not contended that they are disbursing officers,

and upon the face of section 4.30a it seems doubtful that they are officers or agents who certify or approve particular payments to the treasurer.

The doubt that arises from the language of section 4.30a, considered alone, is reinforced when the two preceding sections of the statute are taken into account. Section 4.29 requires the Director of Personnel to certify to the treasurer all appointments to the classified civil service of the District, and all vacancies in that service. (Ill. Rev. Stat. 1963, chap. 42, par. 323.29.) Section 4.30 then provides: "No treasurer, comptroller, paymaster, auditing officer or other officer or agent of the sanitary district shall approve the payment of, or be in any manner concerned in paying any salary or wage to any person for services as an officer or employee in the public service covered by this Act, unless an estimate, payroll or account for such salary or wage, containing the names of the persons to be paid and a statement of the amount to be paid each and the matter on account of which the same is to be paid, shall be filed with him, bearing the certificates of the Director that the persons named in such estimate, payroll or account have been appointed or employed in pursuance of law, and that the amounts of money set forth are lawfully due them under this Act and of [*sic*] the rules made in pursuance of this Act." Ill. Rev. Stat. 1963, chap. 42, .par. 323.30.

When these related sections are read together it is clear that they are designed to require an independent check by the Director of Personnel upon the propriety of each payment of salary or wages, and that no such payments are to be made without the certificate of the Director of Personnel that the persons to be paid have been appointed or employed in accordance with the civil service provisions of the statute and that the amounts of money to be paid are lawfully due. It is to payments made without this type of certification or approval that the sanction of personal liability was intended to apply. It is not suggested that it is

the function of the trustees to certify or approve payments of this type. We conclude, therefore, that section 4.30a does not apply to the Trustees of the District. That conclusion is strengthened by the fact that when the legislature intended to impose personal liability on the Trustees, as it did in the case of diversions from the working cash fund, it said so in unmistakable terms. Ill. Rev. Stat. 1963, chap. 42, par. 328b.

We are also of the opinion that the complaint does not allege a cause of action which, under the statute, would sustain the imposition of personal liability upon the paymaster. The statute is aimed at those who neglect their duties with respect to insuring the correctness of payments made to individual employees. There is no allegation in the complaint that any payments were made by the paymaster without having first received the appropriate certifications. To the extent that section 4.30a authorizes a suit to restrain a disbursing officer, the remedy that it affords does not appear to differ from that available in an ordinary taxpayer's action.

These conclusions make it unnecessary to consider the defendants' challenge to the constitutionality of section 4.30a.

What remains is the plaintiff's action as a taxpayer, apart from the statute, against all defendants. To the extent that the complaint alleges a taxpayer's action with respect to the increase in the rates of pay of Assistant Engineers I, II and III, we hold that it is sufficient to require an answer. Factual and legal issues that may thereafter arise are not now presented for decision. The judgment of the circuit court is therefore reversed and the cause is remanded with directions to overrule the defendants' motion to dismiss to the extent that it relates to the claim asserted by the plaintiff as a taxpayer with respect to the alleged change in the rates of pay of Assistant Engineers I, II and III.

*Reversed and remanded, with directions.*