(No. 46540.—

PAPER SUPPLY CO. *et al.*, Appellants and Cross Appellees, v. THE CITY OF CHICAGO *et al.*, Appellees and Cross Appellants.

*Opinion filed July 1, 1974.—Modified on denial of
rehearing September 26, 1974.*

554

RYAN, J., UNDERWOOD, C.J., and DAVIS, J., dissenting.

Neistein, Richman, Hauslinger & Young, Ltd., and Prins, Flamm & Susman, Ltd., both of Chicago (Harry A. Young, Jr., Arnold M. Flamm, and Arthur T. Susman, of counsel), for appellants Paper Supply Co. and Amalgamated Insurance Agency Services, Inc.

Hackbert, Rooks, Pitts, Fullagar and Poust, of Chicago (Henry L. Pitts, William W. Fullagar, Alan S. Ganz, and James J. Breen, of counsel), for appellants Federal Life Insurance Company and United States Steel Corporation.

Burton Y. Weitzenfeld, Theodore Berger, Robert I. Ury, Stanley M. Lipnick, and Ralph S. Eads, all of Chicago (Arnstein, Gluck, Weitzenfeld & Minow, of counsel), for appellants Heyman Corporation, Goldblatt Bros., Inc., Montgomery Ward & Co., Inc., Nabisco, Inc., and Sears, Roebuck and Co.

James F. Ashenden, Jr. and Thomas G. Lyons, both of Chicago (O'Keefe, Ashenden, O'Brien, Hanson & Lyons, of counsel), for appellants Jewel Companies, Inc., Osco Drug, Inc., and Republic Steel Corporation.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan, Daniel Pascale, Lee J. Schwartz, and Jerome A. Siegan, Assistants Corporation Counsel, of counsel), for appellees.

O. Keith Stoutner, Michael S. Virgil, Ronald J. Hoenig, and Lewis, Overbeck & Furman, all of Chicago, for *amici curiae* Andy Frain, Inc., and Andy Frain Security Services, Inc.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In four separate actions filed in the circuit court of Cook County the plaintiffs sought declaratory judgments holding invalid the Chicago Employers' Expense Tax Ordinance (Municipal Code of Chicago, ch. 200.3) and injunctive relief. Two suits were brought by multiple plaintiffs and in each of the other two the named plaintiff purports to sue in its own behalf and in behalf of a class of taxpayers similarly situated. The defendants in each action are the City of Chicago, its treasurer and the director of its department of revenue.

The circuit court ordered the four suits consolidated and allowed a petition to intervene filed on behalf of a number of parties alleged to be employers affected by the ordinance. Defendants moved to dismiss, and following consideration of memoranda and oral argument, the circuit court dismissed the complaints of the plaintiffs and the intervenors and entered judgment holding that with the exception of a portion of the definition of "full-time employee" the ordinance was valid. Plaintiffs appealed, defendants cross-appealed, and we allowed motions filed under Rule 302(b) and ordered that the appeal be taken directly to this court.

In pertinent part the ordinance provides:

"200.3—2. Employers' Expense Tax. A. A tax is hereby imposed upon every employer who, in connection with his business, engages, hires, employs, or contracts with, fifteen (15) or more individuals as commission merchants and full-time employees, or any combination thereof, to perform work or render services in whole or in part within the City of Chicago on and after January 1, 1974. The amount of such tax shall be Three Dollars ($3.00) per month ***. The incidence of this tax shall be upon the employer alone as an employer's expense tax and shall not be transferred directly or indirectly to the commission merchant or full-time employee under any circumstances.

Arguing that the ordinance imposes a tax "upon occupations" plaintiffs contend that it was enacted in violation of section 6(e) of article VII of the 1970 Constitution, which provides:

"(e) A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations."

Defendants contend that under section 6(a) of article VII of the 1970 Constitution the defendant city is empowered to enact the ordinance, that the tax imposed is not a tax "upon occupations" within the contemplation of, and does not violate, section 6(e)(2) of article VII.

Much of the argument contained in plaintiffs' briefs is devoted to review and analysis of the debates of the constitutional convention (Record of Proceedings, Sixth Illinois Constitutional Convention (hereafter Proceedings)) concerning the limitation contained in section 6(e)(2) upon the power of a home-rule unit to impose taxes "upon occupations." In *People ex rel. Keenan v. McGuane,* 13 Ill.2d 520, 527, this court stated: "While in construing the constitution the true inquiry concerns the understanding of the meaning of its provisions by the voters who adopted it, still the practice of consulting the debates of the members of the convention which framed the constitution has long been indulged in by courts in determining the meaning of provisions which are thought to be doubtful." An examination of the Proceedings shows that section 6(e) of article VII was originally paragraph 4.4 of the Majority Proposal of the Committee on Local Government and provided:

"Units of local government shall not impose taxes based upon or measured by income, earnings, or occupation except as authorized by general law." 7 Proceedings 1579.

In its explanation of the proposed section, the Committee said:

"1. *Explanation and Purpose.*

> This paragraph is intended to permit local governments to impose income and occupation taxes, but only if approved by the General Assembly and subject to control and supervision by the General Assembly." 7 Proceedings 1670.

In its discussion it said:

> "The crux of this paragraph is its treatment of the income tax." 7 Proceedings 1670.

It then discussed the reasons for withholding authority from home-rule units of local governments to impose income taxes without legislative authority and in a concluding paragraph stated:

> "It should be noted that paragraph 4.4 requires legislative authorization for taxes based upon an occupation as well as those based upon or measured by income or earnings. In part, the inclusion of occupational taxes in this paragraph is meant to prevent the evasion of its terms by calling a tax an occupation's tax instead of an income or earnings tax. In addition, the reference to occupation taxes will prevent the proliferation of various business and occupation taxes at the local level. Such taxes will be valid only if authorized by the General Assembly. This exception to home-rule taxing powers is justified on the ground that a large number of various and varying occupation taxes could impair the efficient operations of business within the state." 7 Proceedings 1673.

The most extensive debates on this proposed subsection (then 4.4) were held on July 24, 1970. Delegate Borek moved for the approval of the section and explained in substantially the same language as is found in the Committee report that the inclusion of the reference to occupation taxes was to prevent the imposition of a local income or earnings tax and would also prevent the proliferation of various business and occupation taxes at the local level. (4 Proceedings 3150-3151.) A discussion then ensued as to the differences between an occupation tax and licensing an occupation for revenue. (4 Proceedings 3151-3153.) Delegate Borek during this discussion stated:

"Now, in our research we found a number of legislatures through the country to try to avoid; the law said they could not file the earnings or income tax, so they—under the concept of calling it an occupational tax—this is one and the very same thing. But this is why the committee inserted this word to preclude any evasion of some municipality by trying to do otherwise." 4 Proceedings 3152.

The discussion then shifted to the effect on a local sales tax or retailers' occupation tax of the prohibition against taxing occupations. (4 Proceedings 3153-3154.) Delegate Borek during this discussion stated:

"Mr. Scott, I may repeat again, this word 'occupation' was put in there to keep any municipality or whatnot—if we just had earnings and income tax, period, then you may come through and say an occupation tax which means actual earnings. It doesn't have anything to do with the occupational tax as we are charging people with the right to pass it on to them in our sales tax." 4 Proceedings 3154.

Delegate Friedrich then asked if there were not ways local government could evade the purpose of the proposed section. (4 Proceedings 3154.) During this discussion Delegate Kelleghan asked Delegate Borek or Delegate Parkhurst, the chairman of the Local Government Committee, to explain how the language of the proposed section would prevent a court from saying an occupation tax is not an income tax as was done in Colorado. (4 Proceedings 3156.) This comment made reference to the case of *City and County of Denver v. Duffy Storage and Moving Co.*, 168 Colo. 91, 450 P.2d 339. *Duffy* involved the validity of three revenue ordinances (Nos. 232, 233 and 234) enacted by the city of Denver under its broad home-rule powers. Ordinance No. 234 imposed an "Earnings Tax" which the city conceded was an income tax and invalid under the Colorado court's holding in *City and County of Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441, that Denver did not have constitutional authority to impose an income tax. The city urged the court to overrule

the *Sweet* case. Applying the doctrine of *stare decisis* the court refused to overrule *Sweet* and declared Ordinance No. 234 unconstitutional.

Denver Ordinance No. 232 imposed a "Business Occupational Privilege Tax." The tax applied to persons "engaged in any business, trade, occupation, profession or calling of any kind having a fixed or transitory situs within Denver, for any period of time in a calendar month within Denver." The rate of tax imposed was $2 per month measured by the number of owners, partners and employees performing services for such businesses who received compensation in excess of $250 per month. It was contended that this was also an income tax but the court found that the essential details of the ordinance were almost identical in one manner or another with occupation-tax ordinances which it had held valid in *Post v. City of Grand Junction*, 118 Colo. 434, 195 P.2d 958, 6 A.L.R. 2d 737; *Jackson v. City of Glenwood Springs,* 122 Colo. 323, 221 P.2d 1083; *Ping v. City of Cortez,* 139 Colo. 575, 342 P.2d 657; and *City of Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569. Without labeling the tax ("The terminology aside," 168 Colo. 91, 100, 450 P.2d 339, 343) the court held "that the four cited cases have settled the law and set at rest constitutional questions raised herein." 168 Colo. 91, 100, 450 P.2d 339, 343.

Ordinance No. 233, designated "Employee Occupational Privilege Tax," imposed a tax of $2 per month upon an employee for the privilege of performing service within Denver for an employer for wages of more than $250 per month. This ordinance was also attacked as being an income tax. Again without labeling the tax, four justices held that the four occupation-tax cases cited in upholding Ordinance No. 232 were controlling as to Ordinance No. 233. Three dissenting justices felt that Ordinance No. 233 imposed an income tax prohibited by the court's *Sweet* decision.

Delegate Parkhurst, mentioning the *Duffy* case by

name, stated that the Denver occupation tax was a tax measured by income. He said this would be avoided in Illinois, because unlike Colorado, the General Assembly will be able to preempt, without exercising the power, and

"Secondly, we have the limitations contained in the section before you now, which is section 4.4 which says that no unit of local government—home rule or not—no unit of local government can impose a tax measured by income or earnings—which is what they did in Colorado the second time around—or on an occupation except as authorized by general law." 4 Proceedings 3157.

He concluded by stating:

"So we were aware of the sequence of cases in Colorado, Delegate Kelleghan, when we devised this, and we attempted to in our constitution avoid the end run that was successfully used in Colorado." 4 Proceedings 3157.

Delegate Meek then introduced an amendment to strike the words "or" and "occupations." (4 Proceedings 3157.) Delegate McCracken thereafter stated:

"Let me just say this: that at the present stature of the provisions on income taxes—that is, that they are prohibited unless authorized by general law—is perfectly fine with me. I do not wish to direct my remarks to that point at all.

However, I do wish to clear up some murky waters in 4.4, which have been created by the remarks of some of the delegates and some of the committee members. I would be the last to deny that the occupation tax has, from time to time, been bastardized. It has. As a matter of fact, because of the classic case of bastardization of the occupation tax, your counsel has very prudently used the language, 'taxes based upon or measured by income,' because the first time the occupation tax was used as a device to pose an income tax was when a state, in response to the federal income tax statute, defined a prohibition as prohibiting an income tax.

Note the difference in phraseology: 'income tax' as opposed to 'a tax based upon or measured by income.' This terminology is excellent, and in my opinion, makes impossible the bastardization of the occupation tax in the

guise that is the guise of an occupation tax to have the effect of an income tax. So, the point I am making is this: If you want to deny occupation taxes to the cities, okay, but don't put a phony mantle on it. You don't have to do it in order to prohibit income tax." 4 Proceedings 3159.

Delegate Carey thereafter discussed the *Duffy* case and explained that the Denver business occupation tax which was upheld in that case was not based on earnings. (4 Proceedings 3163.) The feeling that an occupation tax was the equivalent of an income tax continued to prevail, however. For example, Delegate Elward:

"I shall vote against the Meek amendment, because in my judgment it permits a backdoor city income tax." 4 Proceedings 3164.

Delegate Durr:

"As we've heard, read, and stated here, in effect allowing an occupation tax turns out to be an income tax, so if I may shorthand it just a little bit and refer to it as an income tax, you will know that I am using that because of the admitted effect of permitting an occupation tax." 4 Proceedings 3166.

Delegate Nudelman:

"Mr. President, I would change my vote from pass to no, and I would explain the vote by saying that it's my interpretation that no matter how you slice it, if you tax occupation, it can only result in an income tax to the occupation ***." 4 Proceedings 3171.

The Meek amendment was defeated by a vote of 58 to 43.

On August 13, 1970, another attempt was made to amend the section (then 8(d)) by deleting the words "or upon occupations." (5 Proceedings 4167.) Delegate Woods stated:

"Mr. President and fellow delegates, well, here we go again. We're going to relitigate everything that was before us. This is nothing in the world but an indirect income tax at the city level, and I'm against it. I hope you are, too." 5 Proceedings 4168.

Delegate McCracken argued that an occupation tax is not an income tax (5 Proceedings 4168), but the amendment was defeated by a vote of 53 to 42.

Partly because of the contradictory interpretations of *Duffy* by the two delegates who attempted to explain the opinion of the Colorado court it cannot be determined whether the delegates concluded that the taxes imposed by the two ordinances held valid in *Duffy* were pseudo-income taxes. It is apparent, however, that the primary concern of the delegates was whether a tax "upon occupations," however labeled or categorized, would in fact impose an income tax, and the objections to permitting the type of tax imposed by the ordinance here attacked were based upon that concern.

The delegates, in the course of their deliberations, failed to define the term "upon occupations" and no further guidance is to be found in the Explanation submitted to the voters. The Explanation states:

> "A home rule unit has broad general powers to regulate for the protection of public health, safety, morals, and welfare, to license for regulatory purposes, to tax, and to incur debt. Subsections (d) and (e) contain a list of what a home rule unit may *not* do, such as license for revenue or impose income taxes or tax occupations, without prior authorization by the General Assembly, or punish felons. A home rule unit has the power to tax unless by three-fifths vote of each House of the General Assembly that power is denied or limited." 7 Proceedings 2728.

When this court, prior to the adoption of the Constitution of 1970 has defined a term found therein, sound rules of construction require that it be given the same definition unless it is apparent that some other meaning was intended. (*Bridgewater v. Hotz,* 51 Ill.2d 103; *Hamer v. Board of Education,* 47 Ill.2d 480; *American Aberdeen-Angus Breeders' Ass'n v. Fullerton,* 325 Ill. 323.) Section 1 of article 9 of the Constitution of 1870 provided "*** the general assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn-keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors

of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates." This court has recognized that, in addition to those enumerated in the Constitution, taxes could be imposed upon other occupations. (See, *e.g.*, *Price v. People,* 193 Ill. 114 (private employment agency); *Bessette v. People,* 193 Ill. 334 (horseshoeing); *Ohio Oil Co. v. Wright,* 386 Ill. 206 (producing oil).) As the court stated in *Reif v. Barrett,* 355 Ill. 104, at page 109: "*** an occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession. Its effect is to license a person engaged in a given calling or occupation. A license in form may not be issued to a taxpayer but the payment of the tax is the license under the authority of the State to engage in such occupation. Regulation is not a necessary adjunct of an occupation tax. It may or it may not be. The payment of the tax itself is a condition precedent to the privilege of carrying on a business or occupation. The payment of the tax is made mandatory by the act creating it upon the right of thy individual to follow the given occupation. An occupation tax may be levied under the general police powers of the State, where its purpose is to regulate or control a given occupation, or it may be levied under the general sovereign powers of the State, where its sole purpose is to raise revenue."

The convention debates do not indicate that the delegates intended that a tax "upon occupations" be defined differently than this court has defined "occupation tax." The explanation submitted to the voters supports the conclusion that no change was intended, and we hold that the provision was intended to proscribe the imposition of a tax on a given occupation.

That the tax imposed by the ordinance is not easily categorized is demonstrated by the following commen-

taries. The late Professor David C. Baum, counsel to the Committee on Local Government at the Convention, stated:

"The prohibition of income, earnings, and occupation taxes (in the absence of legislative authorization) also presents serious difficulties. One of the most feared forms of local taxation is the payroll tax imposed upon salaries and wages paid by businesses located within the taxing unit. The imposition of a payroll tax is a peculiarly sensitive issue because it affects not only residents of the taxing unit who have a voice in the political process that sanctions the tax, but also affects nonresidents who work in the taxing unit but live elsewhere and who ostensibly are politically powerless within the taxing unit. Furthermore, since nonresidents may be subject to earnings or income taxes in their home municipality, they may be subject to double taxation on their wages and salaries unless coordination is supplied from above at the state level.

Although the intention to prohibit payroll taxes (unless permitted by the General Assembly) is clear, no mention of such a tax is made in the constitutional text. Probably the payroll tax should be viewed as one form of a tax 'upon or measured by *** earnings.' But it seems possible for a payroll tax to be fashioned as a levy against an employer, rather than against the earnings received by his employees, thus at least arguably removing the tax from the 'earnings' category.

Another taxation question is raised by the argument that excise taxes should be viewed as occupation taxes. The Illinois Supreme Court rejected this argument recently in its first decision interpreting home rule. [*S. Bloom, Inc. v. Korshak*, 52 Ill.2d 56.] The court determined that

the incidence of the Chicago cigarette use tax fell upon the consumer rather than the retailer or wholesaler. The challenged tax therefore was not a forbidden tax 'upon occupations' and was within the cities' home rule powers." (Footnotes omitted.) Baum, A Tentative Survey of Illinois Home Rule (Part. I): Powers and Limitations, 1972 U. Ill. L.F. 137, 145.

Professor Robert N. Schoeplein writes:

"If no taxes can be imposed on income or earnings, home rule units can still impose taxes on the entirety, or elements, of business *costs* without General Assembly approval. Thus a value-added tax has been suggested. A value-added tax has been defined as a levy on all the costs of production and distribution, except the cost of raw or semiraw materials used in the production of goods and services. As the Chicago Home Rule Commission has noted, however, historically value-added taxes have been employed by national governments rather than by states and municipalities because of severe economic dislocation and adverse allocation effects at the subnational level. Local firms would have to apportion total business on the basis of activities within and without the respective taxing jurisdiction. Such a tax also may add to retail sales prices in a pyramiding fashion, discouraging local purchases. The commission noted that there are those who also see nothing in a value-added tax that cannot be better attained through retail sales taxes.

\* \* \*

The specific constraints in the constitution may cause other problems and necessitate various legal maneuvers for home rule units desiring to tax in order to meet local responsibilities. A home rule unit may adopt a payroll tax, but clearly the

ordinance must be drawn so that in legal theory the levy cannot be interpreted as a tax upon or measured by income, earnings, or occupations. The ordinance must specify unambiguously that the tax is a levy upon the firm, measured by payrolls as one of its costs. Even then, the ordinance may be challenged as violating the intent of the constitutional convention delegates. Local Government Committee members commented that 'occupations' were included in the restrictive section to preclude any opportunities for local income or payroll taxes." Schoeplein, *Home Rule and Local Government Finance: An Economist's Perspective* in Home Rule in Illinois, Final Report, Background Papers, and Speeches, Assembly on Home Rule in Illinois (Cole and Gove ed. 1973), 71 U. Ill. Bull. 73, 83-84 (hereinafter Home Rule).

Professor J. Nelson Young expresses a contrary view. He states that a payroll tax could not be imposed on employees because of the prohibition upon taxes measured by income or earnings nor could it be imposed directly upon the employer because the report of the Local Government Committee is emphatic that section 6(e) was intended to prohibit a payroll tax on earnings. Young, *Home Rule and Local Government Finance: A Lawyer's Perspective,* 71 U. Ill. Bull. 89.

Turning to a "payroll tax" not measured by earnings, Professor Young stated:

"Assuming, however, that a payroll tax could be framed in a manner which would avoid the prohibition with respect to a tax upon income or earnings, the proscription with respect to occupation taxes remains a major hurdle. The decision in *Steward Machine Company v. Davis,* [301 U.S. 548 (1937),] which sustained the unemployment tax under the Social Security Act as a valid

federal excise tax, sheds some light on this matter. In that case, the tax was laid 'as an excise upon the relation of employment.' In contesting the tax, the taxpayer-employer contended that the relation of employment is so essential to the pursuit of happiness that it was beyond the power of Congress to tax. In answer, the Court stated in part as follows: 'Employment is a business relation, if not itself a business. It is a relation without which business could seldom be carried on effectively. The power to tax the activities and relations that constitute a calling considered as a unit is the power to tax any of them. The whole includes the parts.' [301 U.S. at 581.] In this statement, the Court was making the point that since there is no constitutional problem with respect to the imposition of a federal excise tax upon the privilege of engaging in a business, *a fortiori* there is no question as to the validity of a tax imposed upon one of the essential elements of a business, namely, employment. It is submitted that inasmuch as employment is an integral and essential part of the conduct of a business, a payroll tax imposed directly upon the employer could reasonably be considered in substance a tax upon the privilege of engaging in a business. If this were the case, a payroll tax would fall within the proscription upon occupation taxes." Home Rule at 98.

In prior opinions we have attached great weight to the views expressed by the delegates to the Constitutional Convention (*Board of Education v. Bakalis*, 54 Ill.2d 448; *Elk Grove Engineering Co. v. Korzen*, 55 Ill.2d 393; *Rozner v. Korshak*, 55 Ill.2d 430); but in those instances the proceedings indicated a consensus demonstrative of the delegates' intent. Here it is apparent that while during much of the discussion the delegates were considering and

voicing objections to the type of taxes imposed in the Denver ordinances the objections were based on the ground that the taxes there provided were "end runs" to avoid the Colorado constitutional proscription of a city-imposed income tax and not on the desire of the delegates to proscribe the imposition, as a tax "upon occupations," of any type of tax not within the scope of an "occupation tax" as that term was defined in the prior decisions of this court. Further, we are of the opinion that to expand the scope of the type of tax proscribed beyond the long-standing definition of an occupation tax would contravene the intent of the convention to vest home-rule units with broad revenue-raising powers as expressed in the following statement of Delegate Parkhurst:

"When you talk about home rule powers, you're talking not just about property tax rates, sales tax increases, and gas tax increases—everything else except what is specifically limited by section 4—every other conceivable tax except that which is specifically limited by section 4, which basically is the income tax and the licensing for revenue tax possibilities. The second is now in dispute; the first is not in dispute as far as the committee is concerned, the minority report having been withdrawn on that point.

You're talking about literally hundreds of tax opportunities, and the committee came right to grips with the problem. If you want home rule and if you want local autonomy, you've got to give them money. That was our conclusion, and specifically, you've got to give them the right to tax authority across the board with anything they can think of—hotel rooms or airplanes or motorcars or sales or gasoline or anything the fertile mind of man can think of; and that's why this is the broadest home rule grant in any state in the country, and none of those taxing powers under this majority proposal and the minority—none of them can be taken away unless you get a three-fifths' vote in the General Assembly.

Now the next question is, would you get a three-fifths' vote in each house to put some kind of sensible limits back on property tax rates in Illinois? We considered that. We think the answer is yes. We think there

would be some uniform system of property tax rates across the board for all entities of local government, and we think that the three-fifths' vote on that kind of thing could be mustered and would be, very early in the ball game." 4 Proceedings 3043.

Section 6(m) of article VII of the 1970 Constitution provides that the "powers and functions of home rule units shall be construed liberally." We are not persuaded that the debates and the authorities support plaintiffs' argument that the restrictive definition for which they contend is the correct one, and section 6(m) requires that we resolve the question in favor of a broad rather than a narrow interpretation of the taxing power of the city. We have considered plaintiffs' arguments concerning the dire consequences which will result from affirmance of the judgment and their contention that a decision upholding the validity of the ordinance will enable 1356 actual or potential home-rule units to enact ordinances with different rates of taxation, different minimum levels for coverage and different exemptions; we have also considered their argument that as a result "doing business in Illinois would become a nightmare" and that this is precisely what the delegates sought to prevent by prohibiting the imposition of taxes "upon occupations" by home-rule units unless authorized so to do by the General Assembly. Should these dire predictions come to pass, the simple answer is to be found in the provisions of section 6(g) of article VII. We hold that the defendant city, under the provisions of section 6(a) of article VII, had authority to enact the ordinance and that the tax imposed thereby is not violative of section 6(e).

Plaintiffs contend next that if, as defendants assert, the tax imposed by the ordinance is not a tax "upon occupations" but taxes only the privilege of having employees, it is, nonetheless, an invalid tax upon occupations. In support of their position they argue that "It is an elementary maxim of Constitutional law that a tax upon

an integral or inseparable part of the Constitutionally protected activity is as unconstitutional as a tax upon the protected activity by name, since, as a matter of fact, it is the same thing." They argue, too, that an integral part of an employer's occupation is his employees and that the employment of people to work in businesses cannot be separated from the businesses which employ them. As we have noted, the authorities who have addressed themselves to the question are not in agreement as to whether a tax on "payrolls" is proscribed by section 6(e) (see Baum, Schoeplein, Young, *supra*), and the cases cited by plaintiffs do not persuade us that the tax imposed is a tax "upon occupations."

Plaintiffs contend next that the ordinance is invalid for the reason that various of its provisions deny them equal protection of the laws in violation of the Federal and State constitutions. They contend further that the ordinance violates section 2 of article IX of the Constitution of 1970, which provides:

> "SECTION 2. NON-PROPERTY TAXES—CLASSIFICATION, EXEMPTIONS, DEDUCTIONS, ALLOWANCES AND CREDITS
>
> In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable."

They argue that this section "has introduced a new, higher standard of uniformity and reasonableness for non-property tax laws."

One of plaintiffs' briefs contains a table which shows that during the first quarter of 1972, the latest official figures available, 78% of the employers in Chicago, exempted from the tax under the ordinance, employed 12% of the employees, while the 22% of the employers who are subject to the tax employed 88% of the persons employed. They argue that the ordinance is unreasonably

discriminatory in that it imposes the tax upon 22% of the businesses in the city while exempting 78% of them from its provisions. Referring to the same table, defendants argue that the exemption based on the number of employees is not discriminatory and its use enables the city to more easily and efficiently administer the ordinance at the lowest administrative cost.

The exemptions provided in the ordinance are not dissimilar to those found in other tax legislation. In *Carmichael v. Southern Coal Co.,* 301 U.S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, in rejecting an attack on the Alabama unemployment compensation act on the ground that the exclusion of employers of fewer than eight persons rendered the act discriminatory and invalid, the court said:

"Distinctions in degree, stated in terms of differences in number, have often been the target of attack [citation]. It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.

Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others. [Citations.] We cannot say that the expense and inconvenience of collecting the tax from small

employers would not be disproportionate to the revenue obtained. For it cannot be assumed that the legislature could not rightly have concluded that generally the number of employees bears a relationship to the size of the payroll and therefore to the amount of the tax, and that the large number of small employers and the paucity of their records of employment would entail greater inconvenience in the collection and verification of the tax than in the case of larger employers." 301 U.S. 495, 510-511, 81 L. Ed. 1245, 1253-1254, 57 S. Ct. 868, 874.

We hold that the administrative convenience and the expense incurred in the collection or measurement of the tax provide a sufficient justification and a reasonable basis for exempting employers of less than 15 employees (*Midwest Freight Forwarding Co. v. Lewis,* 49 Ill.2d 441), and that the exemption provided is neither unreasonable nor discriminatory.

We have considered plaintiffs' argument that section 2 of article IX "has introduced a new higher standard of uniformity" and conclude that what we said in *Bridgewater v. Hotz,* 51 Ill.2d 103, concerning the term "general and uniform" found in section 4 of article III of the Constitution of 1970 is apposite here, and that the language of section 2 mandates no change in our prior definition of uniformity.

Plaintiffs contend next that the ordinance is violative of section 6(e) of article VII for the reason that several of its sections "give it the attributes of a license for revenue" in that section 200.3—7 requires every employer covered by the ordinance to register, that other licenses granted the employer by the defendant city may be revoked or suspended for willful evasion of the tax (section 200.3—9(d)), and that upon conviction of violation of the ordinance sanctions of both fines and imprisonment may be imposed (200.3—11).

In *Rozner v. Korshak,* 55 Ill.2d 430, in considering a

contention that an ordinance imposing a wheel tax was invalid because it was a license for revenue we said: "The plaintiff's argument derived from the limitation upon the power of a home-rule unit 'to license for revenue' is based upon a misunderstanding of the meaning of that phrase. The power to regulate and the power to tax are distinct powers, but each may be exercised by the imposition of a license fee. [Citations.] The phrase 'to license for revenue' describes those situations in which a governmental unit that did not have the power to tax attempted to raise revenue by the exercise of its police power. [Citations.] Section 6(e) of article VII expresses a continuation of the general prohibition against such a use of the police power to produce revenue. See Report of the Local Government Committee, 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1673-75." (55 Ill.2d 430, at 432-3.) The provisions in the ordinance for registration, and the imposition of sanctions, insure the integrity of the collection process and their inclusion in the ordinance does not serve to convert the tax into a license for revenue. (*Jacobs v. City of Chicago*, 53 Ill.2d 421.) The ordinance is clearly a taxing measure and was not enacted under the city's power to regulate.

Plaintiffs also attack the ordinance on the ground that there is no rational basis for the exemption of certain enumerated classes of employees and that the exemptions provided are discriminatory, lack uniformity and result in an invalid classification. The section attacked (200.3—1G) excludes from the definition of employee any individual performing:

"1. Agricultural labor, as that term is defined in Section 214 of the Illinois Unemployment Compensation Act (Ill. Rev. Stat., 1972 Supp., ch. 48, par. 324).

2. Domestic service solely on a daily basis in a private home.

3. Newspaper carrier delivery or distribution service when the individual is under the age of 18 years.

4. Services in the employ of a not-for-profit organi-

zation and any organization described in Sections 501(c), 501(d), or 401(a) of Title 26 of the United States Code, as qualified by Sections 502 and 503 of said Title 26, unless such organization normally, annually receives unrelated business income in excess of fifty percent (50%) of its total income. For purposes of this ordinance, unrelated income shall have the meanings set forth in Sections 511, 512, 513, 514 and 515 of Title 26 of the United States Code.

    5. Services in the employ of one's father, mother, son, daughter, or spouse.

    6. Services in the employ of any governmental unit, including federal, state or local political subdivisions."

These exempt classifications are similar to exempt classifications in our unemployment compensation act (Ill. Rev. Stat. 1973, ch. 48, par. 300 *et seq.*—(1) agricultural labor (par. 324), (2) domestic service (par. 325), (3) newspaper carriers under 18 (par. 335), (4) employment for not-for-profit organizations (pars. 321.2, 321.3 and 333), (5) family employment (par. 328), and (6) government employment (pars. 329 and 330).) Similar exempt classifications were contained in the Alabama unemployment compensation statute upheld in *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 81 L. Ed. 1245, 57 S. Ct. 868. With respect to these exemptions the court stated: "Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers, and family businesses, not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax. The state may reasonably waive the formality of taxing itself or its political subdivisions. Fear of constitutional restrictions, and a wholesome respect for the proper policy of another sovereign, would explain exemption of the United States ***. In no case do appellees sustain the burden which rests upon them of showing that there are no differences, between the exempt employers and the industrial employers who are taxed, sufficient to justify

differences in taxation." (301 U.S. 495, 513, 81 L. Ed. 1245, 1255, 57 S. Ct. 868, 874.) Here, too, plaintiffs have failed to show that the exemptions are unreasonable.

Plaintiffs contend next that sections 200.3—1G and 200.3—2A of the ordinance are invalid for the reason that in providing for the exemptions from the tax section 200.3—1G incorporates definitions contained in the Illinois Unemployment Compensation Act and the Internal Revenue Code, and section 200.3—2A incorporates into the definitions of a "commission merchant" and "full time employee" references to accounting practices acceptable under the income tax laws of the United States and of the State of Illinois. They argue that the incorporation by reference of the statutes to which the ordinance refers is an unlawful delegation of legislative power. We do not agree. This is precisely the type of incorporation by reference which in *Thorpe v. Mahin,* 43 Ill.2d 36, this court held not to be an unlawful delegation of legislative power.

Plaintiffs contend next that section 200.3—5 of the ordinance is invalid for the reasons that it provides for an unlawful delegation of authority to the director of the department of revenue of the defendant city to impose a late payment penalty, and that the power to impose penalties is a judicial function which cannot be exercised by the director. Section 200.3—5 provides:

> "200.3—5. Interest and Penalties. All taxes imposed by this ordinance and remaining unpaid after delinquency, including any deficiency in the payment of taxes, shall bear interest at the rate of one percent (1%) per month, or fraction thereof, and the delinquent taxpayer shall be liable for said tax and interest and, in addition thereto, unless the Director of Revenue determines that the delinquency is not due to any fault on the part of the taxpayer, the said delinquent taxpayer shall be liable for a late payment penalty of ten percent (10%) of the amount of the underpayment."

We do not agree that the foregoing section provides for an unlawful delegation of authority to the director. The section fixes the interest and late payment penalty rates and confers upon the director only the power to make a finding of fact that "the delinquency is not due to any fault on the part of the taxpayer," in which event the late payment penalty is not assessed. Such factual determinations by administrative agencies or officials are authorized in countless statutes and ordinances, and the provision results in neither an unlawful delegation of authority nor the improper exercise of a judicial function.

Plaintiffs contend next that sections 200.3—2C and 200.3—6 of the ordinance are invalid for the reason that they delegate to the director of the department of revenue of the defendant city legislative and rule-making powers without providing standards governing the exercise of those powers. We do not agree. The ordinance need not set forth every detail essential to its enforcement. (*Brown v. City of Chicago,* 42 Ill.2d 501.) The ordinance contains sufficient controls and standards so that there is no unlawful delegation of legislative authority. *S. Bloom, Inc. v. Korshak,* 52 Ill.2d 56.

Plaintiffs contend next that section 200.3—9B of the ordinance is invalid. In pertinent part section 200.3—9B provides:

> "The circuit Court of Cook County shall have the power to review the final administrative decisions of the Director of Revenue rendered pursuant to Subsection 200.3—9A and Subsection D of Section 200.3—8. The provisions of the Administrative Review Act (Ill. Rev. Stat. 1973, paragraphs 264 through 279) and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of such final administrative decisions of the Director."

Plaintiffs argue that because the General Assembly has not authorized the defendant city to provide that admini-

strative decisions rendered in the enforcement of the ordinance shall be reviewed under the Administrative Review Act the section must be held invalid.

Defendants contend that under the provisions of its section 2 (Ill. Rev. Stat. 1973, ch. 110, par. 265) the Administrative Review Act may be made applicable to administrative decisions rendered under the ordinance. We do not agree. The method of judicial review of the decisions of the defendant city's administrative agencies is not a "function pertaining to its government and affairs" within the contemplation of section 6 of article VII of the Constitution of 1970, and the determination of the manner or method of such review is not within the powers conferred upon the City. Although section 200.3—9B is invalid, it is severable, and our holding it invalid does not affect the remainder of the ordinance.

Plaintiffs have attacked several provisions of the ordinance which, they argue, are void for vagueness, indefiniteness and uncertainty. In this ordinance, as in many ordinances and statutes, the provisions contain general language, and the variety of interpretations suggested is limited only by the ingenuity of counsel who attack them. This case is before us on the pleadings in declaratory judgment actions, and upon examination of the ordinance we conclude that there is no basis to anticipate that application of the provisions here attacked will present any undue difficulty. Should a set of facts present itself under which enforcement of the ordinance results in a deprivation of equal protection or due process, the matter can be adjudicated at that time. Meanwhile as we said in *Mahin v. Baltis*, 34 Ill.2d 413, "Factual and legal issues that may thereafter arise are not now present for decision." 34 Ill.2d 413, at 421.

Plaintiffs have also attacked section 200.3—9D of the ordinance, which provides:

"D. If the Mayor, after hearing held by or for him, shall find that any person has willfully evaded payment of the

tax imposed by this Chapter, he may suspend or revoke all city licenses held by such tax evader. Said person shall have an opportunity to be heard at such hearing to be held not less than five (5) days after notice is given to him of the time and place of the hearing to be held, addressed to him at his last known place of business. Pending notice, hearing and finding, any license issued by the City of Chicago possessed by said person may be temporarily suspended. Any suspension or revocation of any license shall not release or discharge said person from his civil liability for the payment of the tax, nor from prosecution for such offense."

They argue that the section "suffers from two fatal due process defects" in that it fails to provide for a hearing under the provisions of the ordinance under which the license was granted, and purports to authorize suspension without regard to the provisions for revocation under the licensing ordinance.

We do not find the ordinance invalid on its face, and, as we said with respect to plaintiffs' contentions that portions of the ordinance were void for vagueness, indefiniteness and uncertainty, on this record no factual or legal issues are presented for decision. As we said in *Stein v. Howlett,* 52 Ill.2d 570, at page 580: "The fact that a statute might be susceptible of misapplication does not necessarily make it unconstitutional."

Plaintiff Federal Life Insurance Company (Mutual) contends that the ordinance is violative of the provisions of section 2.30 of "An Act providing for the exclusive exercise by the State of the power to regulate certain professions, vocations and occupations" (Ill. Rev. Stat. 1973, ch. 127, par. 902.30). In *Fuehrmeyer v. City of Chicago,* 57 Ill.2d 193, that act was declared invalid.

We consider now the city's cross appeal from that portion of the judgment which held unconstitutional a part of the definition of "full-time employee" contained in the ordinance. Section 200.3—1H defines a full-time employee as follows:

."The term 'Full-Time Employee' shall mean an individual who earns or to whom are accrued wages from employment of at least $900 in any calendar quarter of a year, or an individual who is employed for some portion of a day within each of eight (8) or more calendar weeks within said calendar quarter, from or for the same employer who is subject to the tax imposed by this chapter."

The circuit court held unconstitutional that part defining as a "full-time employee" an individual who is employed for some portion of a day within each of eight (8) or more calendar weeks within said calendar quarter.

The city argues that the term "full-time employee" has no definite meaning other than that given to it in a particular statute. It contends that the term may be defined in any manner as long as it is clear on its face as to the class of individuals to which it applies. No authority is cited for this contention, but the city asserts that the definition is reasonable because persons who work a part of a day for eight (8) weeks are employed for two-thirds (2/3) of the entire calendar quarter.

Webster's Third New International Dictionary defines full time as "the amount of time considered the normal or standard amount for working during a given period (as a day, week, or month)" and defines part time as "an amount of time less than full time." The ordinance embraces a broad range of employment in which the normal or standard amount of time for working during a given period would vary greatly, and therefore, a broad definition of full-time employment is necessary. However, as plaintiffs contend, the breadth of this definition of full-time employment could include employees whose actual working time could be so minimal that the employer would be required to pay more in tax by reason of the employment than he pays the employee in wages.

While the General Assembly or a city council may and frequently does use words in a statute or ordinance in

other than their usual sense, we conclude that the portion of the definition of full-time employee which was stricken by the circuit court creates a class which includes employees who cannot constitutionally be considered full-time employees within this ordinance. We hold that defining an individual who is employed for some portion of a day within each of eight (8) or more calendar weeks within a calendar quarter as a full-time employee upon whom an employer must pay a tax of $3 per month creates an unreasonable classification under section 2 of article IX of the 1970 Illinois Constitution, and for that reason we agree with the circuit court that the definition cannot stand.

For the reasons stated, the judgment of the circuit court of Cook County insofar as it holds valid section 200.3—9B is reversed, and in all other respects the judgment is affirmed.

*Affirmed in part and*
*reversed in part.*

MR. JUSTICE RYAN, dissenting:

I am firmly convinced that the tax sought to be imposed by the Chicago ordinance falls within the limitations of section 6(e) of article VII of the 1970 Constitution which provides:

> "A home rule unit shall have only the power that the General Assembly may provide by law (1) *** (2) to license for revenue or impose taxes upon or measured by income or earnings or *upon occupations.*" (Emphasis added.)

Before specifically stating the basis for my conclusion it should be noted that in his argument before the trial court, a verbatim transcript of which is contained in the record, counsel for the City of Chicago admitted that the ordinance was drafted to circumvent the constitutional limitation italicized above.

The pressing needs created by the urbanization of the

rural society which existed at the time of the adoption of the 1870 Constitution may have justified judicial construction of that document in later years circumventing certain of its rigid proscriptions. However, there is no reason to countenance a deliberate attempt to circumvent the express limitations of the 1970 Constitution two and one-half years after its effective date. The provisions of section 6 of article VII grant to home-rule units broad taxing powers and the prior decisions of this court have construed those grants liberally. With such a broad taxing authority it hardly seems necessary at this early date through judicial construction of an ordinance deliberately drafted to circumvent this limitation, to eliminate one of the few restrictions which the constitutional convention saw fit to impose upon the home-rule power to tax.

The Committee on Local Government explained that the reason for the limitation on the authority to impose a tax upon occupations was not only to prevent the evasion of the income tax restriction but:

> "In addition, the reference to occupation taxes will prevent the proliferation of various business and occupation taxes at the local level. *** This exception to home-rule taxing powers is justified on the ground that a large number of various and varying occupation taxes could impair the efficient operations of business within the state." 7 Proceedings 1673.

The plaintiffs argued the dire consequences of such a proliferation of taxes upon occupations throughout the State disguised as taxes upon employers and urged that such a tax is contrary to the above quoted reasons for the limitation. However, the majority of this court brushed this argument aside by replying that the simple answer to this argument is found in section 6(g) of article VII. Of course this "simple answer" ignores the simple facts of political life because section 6(g) requires a vote of three fifths of the members of each house of the General Assembly to deny or limit the power of a home-rule unit to tax. Those in whom political power is concentrated in

home-rule units and who exert considerable influence over members of the General Assembly are not likely to freely surrender this lucrative power to tax occupations. All of which makes it highly unlikely that the "simple answer" of a three-fifths vote in each house will ever be achieved. The more realistic and practical answer would be to acknowledge that under section 6(e) of article VII a home-rule unit does not have the power "to license for revenue or impose taxes upon or measured by income or earnings or upon occupations," unless that power is granted by the General Assembly which may be done by a simple majority vote. This would appear to be in accord with the intent expressed by the Committee on Local Government that the imposition of taxes on occupations should be subject to the control of the General Assembly lest proliferation of these taxes impair the efficient operation of business within the State.

The City argues and the majority opinion finds that this court has historically and traditionally spoken of an occupation tax as a tax on a *given* occupation. Therefore, since the tax imposed by the ordinance is not on a given occupation but covers a broad cross-section of occupations (in fact, taxes all occupations) it is not, according to the majority, an occupation tax within the prohibition of the constitutional provision. The majority quotes from *Reif v. Barrett,* 355 Ill. 104, to support this conclusion. Although the language in *Reif* does refer to a *given* business or occupation the decision in *Reif* did not relate to a *given* or specific occupation or business. Rather that case involved the validity of the Retailers' Occupation Tax Act and held that the legislature had the inherent power to tax the occupation of those persons engaged in the business of selling tangible personal property to purchasers for use or consumption. Thus, the tax in *Reif* did not involve a tax on a given or specific occupation such as grocer, butcher, restauranter, dry goods merchant, *etc.* but rather that case was concerned with a general occupation tax covering all

classes of occupations engaged in the business of selling tangible personal property to purchasers for use or consumption.

Also in *Stiska v. City of Chicago,* 405 Ill. 374, this court held that an "amusement" occupation tax levied by the City of Chicago under authority granted by the General Assembly covered a wide range of specific occupations under the term "amusement." Thus, historically this court has not limited the application of occupation taxes to specific or given occupations but has rather used the term in a generic sense.

Regardless of how this court has interpreted or applied occupation taxes in the past, contrary to the conclusion of the majority opinion it is clear that the kind of tax imposed by the ordinance under consideration was within the contemplation of the delegates of the constitutional convention when section 6(e)(2) of article VII was fashioned and adopted.

As the majority opinion indicates, the case of *City and County of Denver v. Duffy Storage and Moving Co.,* 168 Colo. 91, 450 P.2d 399, was discussed at length in the convention. This case involved the validity of three ordinances enacted by the City of Denver under its home-rule powers. One of the ordinances (ordinance No. 234) imposed a tax on earnings which the city conceded to be an income tax. The Supreme Court of Colorado had previously held in *City and County of Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441, that Denver, as a home-rule city, did not have the constitutional authority to impose an income tax. In *Duffy* the court held the ordinance No. 234 invalid as an income tax.

In Colorado, however, there was no limitation upon a home-rule city's authority to impose an occupation tax, and thus, as stated in the majority opinion of this court, the city of Denver by ordinance No. 232 imposed an occupation tax upon those engaged in business measured by the number of employees performing services for such

business. Also, by ordinance No. 233 the city of Denver imposed a tax upon each employee for the privilege of performing services within Denver for an employer for wages. Both ordinance No. 232 and 233 were attacked as being in fact income taxes which the city had no authority to impose. However, the Supreme Court of Colorado by a divided court as to ordinance No. 233 (the tax on employees) held that it was not an income tax but was an occupation tax. As to ordinance No. 232, by a unanimous court it was held that the tax on the employer was an occupation tax. Thus, ordinance No. 232 and ordinance No. 233 were held not to be income taxes and invalid but occupation taxes which were constitutionally permissible in Colorado. In light of this the explanation of the convention's Local Government Committee's proposal by its Chairman Parkhurst assumes definite meaning. As the majority opinion states, Chairman Parkhurst said:

"So we were aware of the sequence of cases in Colorado, ***, when we devised this, and we attempted to in our constitution avoid the end run that was successfully used in Colorado." 4 Proceedings 3157.

The sequence of cases referred to was first, the *Sweet* case holding that home-rule units had no authority to impose an income tax; second, the holding in *Duffy* that ordinance No. 234 was invalid as an income tax; third, the holding that ordinance No. 232 which imposed the tax on the employers was not an income tax and invalid but an occupation tax and valid, and fourth, the holding that ordinance No. 233 imposing a tax on employees was likewise not an income tax and invalid but an occupation tax and valid. When Chairman Parkhurst referred to the end run in Colorado he was referring to the use of the occupation tax as it was used in ordinances 232 and 233. When he stated that we attempted in our constitution to avoid this end run he was referring to the specific prohibition against the imposition of taxes upon occupations. It is true as stated in the majority opinion that some

of the delegates doubted that an occupation tax could be used as a means of indirectly imposing an income tax. However, it is clear from the debates that the convention intended to prohibit the type of tax which the city of Denver had imposed by its ordinance No. 232 and which the Supreme Court of Colorado had unanimously approved in *Duffy*.

The majority opinion refers to the discussion of the *Duffy* case by Delegate Carey when he spoke in support of the Meek amendment which attempted to delete the prohibition against the imposition of taxes upon occupations. Delegate Carey referred to the three taxes imposed by the ordinances of the city of Denver and to the decision in the *Duffy* case. He pointed out that the court struck down the ordinance that imposed an income tax, and he also referred to the less-than-unanimous decision of the court in upholding the "Employee Occupational Privilege Tax." In discussing the "Business Occupational Privilege Tax" on the employer he stated:

"But it was seven to nothing on the business occupational tax, and I think that clearly indicates that the Colorado court felt that the business should bear part of the tax burden for the privilege of operating within the city, and their conclusion was that this broadened the area of permissible taxation and was an important advance for home rule cities in Colorado.

I support the Meek amendment. I oppose any tax based upon or measured upon income—a city income tax or a payroll tax—but it just makes good sense for the city to have the opportunity to tax a business using their facilities and requiring tax monies to give them that privilege." 4 Proceedings 3163.

Following extensive discussion, including many references to the Colorado case, the Meek amendment was defeated. (4 Proceedings 3171.) Another attempt to adopt a similar amendment was likewise defeated. (4 Proceedings 3371.) A third attempt to delete the prohibition against imposing a tax upon occupations was presented by Delegate Elward,

and this amendment was also defeated. 5 Proceedings 4167-4169.

In summary, the delegates were well aware of the Denver occupation tax on employers. They were familiar with the holding of the Colorado Supreme Court that this tax was an occupation tax. On three occasions amendments were offered to remove from the committee proposal the limitation on a home-rule unit's authority to impose an occupation tax. Delegate Carey, in speaking on behalf of the Meek amendment, had specifically urged that home-rule units be authorized to impose a tax on employers similar to the one that Denver had imposed. The three amendments were defeated and the committee proposal was adopted and is incorporated in section 6(e)(2) of article VII. These debates and the action taken by the constitutional convention leave no doubt that the term "occupations" as used in that section of our Constitution encompasses a tax such as the city of Denver imposed by its ordinance No. 232.

The ordinance of the City of Chicago is similar in all material respects to the provisions of ordinance No. 232 of the city of Denver with the exception, of course, that its drafters studiously avoided the use of the words "occupation tax" or words of similar import. However, as noted above, Delegate Carey had lauded the *Duffy* decision for the just result of compelling businesses to bear a part of the tax burden for the privilege of operating within the city and urged that a similar tax be authorized in Illinois. This suggestion was rejected. Yet counsel for the City of Chicago in a memorandum filed with the trial court in support of its motion to dismiss the complaints in this case stated: "The clear purpose of the tax is to require that employers that use the services of the City of Chicago to make a profit should pay a fair share of the expenses incurred by the City of Chicago in providing those services and facilities." It thus appears that although the propo-

nents of the occupation tax lost their battle in the constitutional convention, they were not dismayed. They simply relabeled their effort in the form of this ordinance and now by virtue of the decision of this court have accomplished the same thing that was denied to them by the constitutional convention.

Contrary to the conclusion of the majority opinion I find that the convention debates indicate a clear understanding on the part of the delegates as to the nature of the taxes they were prohibiting home-rule units from imposing when they referred to "taxes upon or measured by income or earnings or upon occupations."

For these reasons I would hold the ordinance of the City of Chicago under consideration in this case invalid.

UNDERWOOD, C.J., and DAVIS, J., join in this dissent.